FIFTH DISTRICT COURT OF BERGEN COUNTY.

ANNA C. ELLIS, PLAINTIFF, v. ALFRED J. McDERMOTT, DEFENDANT.

For the plaintiff, *E. R. Weller.*

For the defendant, *Herman Vanderwart.*

LOSCHE, J. This was an action to recover rent for the months of November, 1927, to March, 1928, inclusive, under a written lease dated March 1st, 1927, made by plaintiff, landlord, to defendant, tenant, for the term of "thirteen months commencing the first day of ......., 1927, and to end at noon on the thirty-first day of March, 1928;" in which the defendant covenanted and agreed to pay the plaintiff "the term rent or sum of eight hundred and forty-five [$845] dollars in equal monthly payments of sixty-five [$65] dollars each on the first day of each and every month and in advance until the expiration of the term of this lease, March 31st, 1928."

The defendant filed specifications of defenses setting up a constructive eviction.

The action proceeded to trial before the court without a jury on July 24th, 1929.

The plaintiff offered evidence to the effect that the defendant vacated the demised premises on October 1st, 1927; that the rent for the period to and including October 31st,

1927, had been paid by defendant, the last rent having been paid on October 1st, 1927, but that the rent for the months of November, 1927, to March, 1928, inclusive, was not paid, although duly demanded.

The plaintiff thereupon offered to prove, in mitigation of damages, efforts to rent the premises but the court excluded it on the ground that such evidence was not a necessary part of plaintiff's *prima facie* case in view of the fact that the lease contained a covenant on the part of the tenant— "3. Not to let, under-let or assign the premises, or any part thereof, except by written consent of landlord or agent." Citing *Muller* v. *Beck,* 94 *N. J. L.* 311.

There was no covenant of quiet enjoyment in the lease. The words used are: "* * * the said landlord hereby agrees to let, and the said tenant agrees to, and hereby takes and hires, * * *." In the face of such a lease there can be no implied covenant of quiet enjoyment. *Mershon* v. *Williams,* 63 *N. J. L.* 398; *May* v. *Levy,* 88 *Id.* 351. Notwithstanding the language used in *Meeker* v. *Spalsbury,* 66 *Id.* 60 (at *p.* 64), and *Metropole Construction Co.* v. *Hartigan,* 83 *Id.* 409 (at *p.* 411).

The building in question was a two-family apartment house, the plaintiff occupying the first floor and the defendant the second floor. The Osborn house adjoined on the one side about six or eight feet away and likewise the Bestel house, adjoined on the other side. The building, according to defendant's wife, was like a shell.

The defendant offered evidence to the effect that—

There was rattling of dishes in plaintiff's apartment for about fifteen minutes almost every night between ten P. M. and one A. M.

There was rattling of the garbage can cover almost every night between the same hours, for a few minutes; defendant's daughter said it was a matter of seconds. There was no evidence indicating who did it except that on two or three occasions the defendant saw the plaintiff rattling it.

The doors, windows and window screens were slammed between the same hours; but there was no definite evidence as to how long the slamming continued.

The pulley line, which was squeaky, was drawn by the plaintiff for the purpose of hanging out her stockings which she washed almost every night.

There was loud talking and arguing in plaintiff's apartment; but the evidence was conflicting as to how long the arguments continued; defendant's wife testified that "one special argument lasted for five minutes;" and witnesses for the defendant, Mr. Osborn and Mr. Bestel, testified that one hour was the usual length of the arguments, but these two witnesses were clearly biased.

The defendant, his wife, his daughter, Mr. Bestel and Mr. Osborn testified that the said disturbances occurred nightly for about five nights a week between ten P. M. and one A. M. during the space of about one hour and one-half.

Defendant, defendant's wife and Mr. Osborn each testified to a separate insulting remark uttered by the plaintiff, and there was testimony that the plaintiff mimicked defendant's wife and daughter.

A letter dated August 1st, 1927, addressed to plaintiff by defendant was received in evidence on defendant's offer. It advised plaintiff of defendant's intention to vacate on October 31st, 1927, because of the noises complained of, and added significantly: "If in the meantime you can get a tenant for this flat, it will be open for inspection at all times. We will gladly vacate at your convenience."

There was some evidence that the plaintiff stated that she wished that the defendant would vacate the premises. This, however, was definitely counteracted by plaintiff's letter of September 23d, 1927, in reply to defendant's letter of August 1st, 1927, which was received by the defendant prior to his removing from the premises and which advised defendant that he would be held for the rent for the full term of the lease.

There was evidence that the defendant on June 20th, 1927, purchased a plot of land in Teaneck and had built a house thereon, to which he and his family removed upon vacating the plaintiff's house.

Defendant and his wife testified that after the receipt by plaintiff of the letter of August 1st, 1927, the disturbances

quieted down and, to use defendant's own words, there was "very little noise after August first." Later he testified that the noise increased in volume after an interval of about three weeks.

It is significant that defendant's witness, Miss Reddy, a trained nurse who boarded with the defendant, was able to endure all of the alleged disturbance and did not leave the defendant's apartment until the defendant, himself, moved with his family to Teaneck.

In *Birckhead* v. *Cummins,* 33 *N. J. L.* 44, Chief Justice Beasley said: "The legal effect of eviction is so penal that the doctrine is not to be favored; * * *."

In *Meeker* v. *Spalsbury,* 66 *N. J. L.* 60 (at *p.* 63), the court, quoting from *Upton* v. *Townsend, &c.,* 17 *C. B.* 30, stated that eviction must be "not a mere trespass, but something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises," and that it is "an act of a permanent character done by the landlord in order to deprive, and which had the effect of depriving, the tenant of the use of the thing demised, or of a part of it."

The court states further, at page 64: "This definition has been generally approved in this country."

I am satisfied that defendant was annoyed by some of plaintiff's actions. Undoubtedly, plaintiff is possessed of some idiosyncracies which, I can appreciate, might have caused some neighborly antagonisms. However, I am not convinced that plaintiff was the only disturbing element in the neighborhood. There was evidence that the garbage can cover was rattled by prowling cats; that there were noisy children in the Osborn house; that there were noisy boarders in the Bestel house, and that there were building operations in process across the street in the new People's Trust and Guaranty Company's nine-story steel building. While, it is true, the defendant has not complained of these latter items, the evidence of them indicates that the neighborhood was not the calm and peaceful hamlet wherein every movement or sound made by the plaintiff stood out in bold relief.

In considering the whole case, I am not satisfied that there was sufficient noise or disturbance on the part of the plaintiff to fulfill the requirement of the law that there should be "something of a grave and permanent character" in order to constitute a constructive eviction of the defendant.

Furthermore, the defendant, his wife and daughter claimed that the noise and disturbance on the part of the plaintiff started the very day in March, 1927, when they moved into the premises and continued throughout their occupancy (except for the surcease in August) until they vacated on October 1st, 1927.

The law is clear that the tenant has only a reasonable time after the alleged eviction within which to exercise his right to vacate the premises, and if he fails to do so, he loses that right. Certainly, the defendant's occupancy from March until October 1st, during practically all of which time the alleged cause of abandonment continued, would operate as a waiver.

In 16 *R. C. L.* 949 it is stated: "If, however, the tenant makes no surrender of the possession, but continues to occupy, after the commission of the acts would would justify him in leaving, he will be deemed to have waived his right to abandon and he cannot sustain a plea of eviction by showing such circumstances."

See, also, *Metropole Construction Co.* v. *Hartigan*, 83 *N. J. L.* 409, foot of page 414.

Under the circumstances, the expression of the court in *Gunther* v. *Oliver*, 97 *N. J. L.* 376; *affirmed*, 98 *Id.* 563 (at *p.* 378), is apposite to this situation:

"If the tenant, Oliver, had the right to abandon the leasehold he ought to have done it promptly. The trouble of which he complained began with the beginning of his tenancy and he did not feel compelled to abandon it until he had had the benefit of eight months' occupation out of ten."

These views lead to the conclusion that judgment should be entered in favor of the plaintiff and against the defendant in the sum of three hundred and twenty-five ($325) dollars, with costs.